IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:17-246-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| NOAH BILLIE | ) | |
| _____ | ) | |

This matter is before the court on defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 189). Seeking compassionate release, the defendant asserts that he has medical conditions which could threaten his life if he were to contract COVID-19.

The government has responded and opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that based on his prior history of violent behavior and the factors under 18 U.S.C. § 3553(a), that this court should deny relief.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is denied.

PROCEDURAL HISTORY

The defendant, Noah Billie, together with co-defendants Bradley Thompson and Tiffany Metze, conspired to rob a drug dealer (Bruce Hudson) in Lexington County, South Carolina in February 2017. During the attempted robbery, the defendant discharged his

1

firearm and shot Hudson in the abdomen and spine, leaving him permanently paralyzed from the chest down. After the shooting, Billie, Thompson, and Metze fled from the scene and remained in the community until each was subsequently arrested on different dates for their roles in the robbery.

The defendant was one of three defendants named in a five-count Superceding Indictment which charged the following:

Count 1: assault on a Deputy United States Marshal, while engaged in the performance of his official duties, in violation of 18 U.S.C. §§ 111(a) and 111(b);

Count 2: assault on a Deputy United States Marshal Task Force Officer, while engaged in the performance of his official duties, in violation of 18 U.S.C. §§ 111(a) and 111(b);

Count 3: conspiracy to commit Hobbs Act robbery, consisting of "Ice" (methamphetamine) and proceeds from the distribution of Ice from the victim, in violation of 18 U.S.C. § 1951 and 2;

Count 4: conspiracy to commit Hobbs Act robbery, consisting of "Ice" (methamphetamine) and proceeds from the distribution of Ice from the victim, in violation of 18 U.S.C. § 1951 and 2; and

Count 5: possession of a firearm in furtherance of, and use and carry of a firearm during and in relation to a crime of violence, and the firearm was discharged, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2.

The defendant was charged in Counts 3, 4, and 5 above.

On October 30, 2017, the defendant entered a guilty plea to Count 5 in a written Plea Agreement (ECF No. 90). A Presentence Report (PSR) (ECF No. 113) was prepared which indicated that the defendant faced the minimum term of imprisonment required by statute,

which was 10 years, to run consecutively to any other term imposed. As a firearm was possessed and discharged during the commission of a crime of violence, the Guideline sentence was 120 months imprisonment. The defendant's criminal history score was 3, which placed him in a criminal history category of II.

On June 27, 2018, this court sentenced the defendant to a custodial sentence of 120 months, to be followed by a term of supervised release of 5 years.

The defendant did not file an appeal of his conviction or sentence.

The defendant has served 46 months (approximately one-third) of the sentence imposed. His scheduled release date from the BOP is August 29, 2025. He is located at the Federal Correctional Institution Gilmer, West Virginia.[1]

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

---

[1] While the defendant spends a good portion of his motion and reply complaining of the conditions of his confinement at FCI Gilmer, such matters must be properly raised and exhausted before the BOP prior to review by a federal court.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under

§ 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

In summary, when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any

extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court may reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

In this case, the defendant avers in his motion that he has filed a request with the Warden and has not received a response back. Although the government challenges the defendant's showing of exhaustion, this court will accept the defendant at his word and assume that exhaustion has occurred.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant primarily contends that his obesity and hypertension would likely cause significant complications should he contract COVID-19. He attests that his obesity causes him to have shortness of breath and hygiene issues. He also says his panic attacks have increased, and he has had several blackouts. The defendant has not provided this court with documentation for his asserted medical conditions. The government has, however, reviewed

7

the defendant's most current BOP medical records and acknowledges that he has been diagnosed with hypertension, hyperlipidemia (high cholesterol), some mental illness, and obesity.

According to the government, the defendant's medical records indicate that both his hypertension and hyperlipidemia are controlled with medication[2] and that his mental illness is in remission. His body mass index (BMI) noted in the medical records is 45.6. The records also note that the defendant is encouraged to reduce his weight.

The Center for Disease Control (CDC) guidance acknowledges that obesity is a risk factor for getting severely ill from COVID-19. According to the CDC, the prevalence of obesity in the United States is 42.4%, situating the defendant with nearly half of the population. *See* https://www.cdc.gov/obesity/data/adult.html (last accessed October 14, 2021).

In addition, at the time of the defendant's sentencing (June 25, 2018), the defendant's PSR stated that the defendant was in "relatively good health" and that he was "not taking any prescribed medication for any physical ailments."

On this record, the court concludes that the defendant has made a relatively weak showing of a medical condition sufficient to support a finding that "extraordinary and compelling" reasons exist for his immediate release. The court will, nevertheless, give the

---

[2] As noted by the government, the defendant's medical issues appear to be exacerbated by his own choices. For example, the defendant admits to discontinuing his hypertension medication, despite the fact that the BOP provided it to him for the purpose of addressing his high blood pressure. The defendant contends that he ceased taking the medications Lisinopril and Furosemide because he heard that the drugs were linked to an increasing risk of contracting COVID-19.

defendant the benefit of the doubt and assume for purposes of the present motion that he has in fact demonstrated an extraordinary and compelling reason for his release based upon his obesity and hypertension.

However, even assuming that the defendant has demonstrated an extraordinary and compelling reason for compassionate release, this court is of the strong opinion that the defendant's sentence should remain in place. In doing so, the court has carefully analyzed and applied all of the § 3553(a) factors to conclude that the defendant's sentence is sufficient, but not greater than necessary, to serve the statutory purposes of sentencing. The court will thus proceed to set out its explanation with regard to the § 3553(a) factors below.

*Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and circumstances of the Offense.* It cannot be denied that the defendant's crime was particularly egregious. The defendant is a member of the Bloods street gang, a violent organization. In this instance, the defendant conspired with two others to participate in the armed robbery of a drug dealer in the Midland's area of South Carolina. During this robbery, the defendant used a female decoy to draw out his victim. He then shot the victim which left him permanently paralyzed. The defendant then fled the scene and was eventually arrested and charged with the offenses in this case.

As the government notes in its brief, the defendant planned to obtain a firearm, he planned to rob a person, he planned to draw his weapon during the robbery, and ultimately he decided to use the weapon without regard for the consequences to the victim.

9

2.   *History and Characteristics of the Defendant.*  A review of the defendant's criminal history, which began at the age of 15, includes juvenile convictions for assault and battery, and aggravated assault with a weapon.  At the age of 21, he was convicted and served time for DUI manslaughter in Florida.[3]  The government notes that the defendant was driving under the influence during the automobile accident that killed his brother.  As an adult, the defendant has been convicted of battery and resisting arrest for which he was given a sentence of time-served and 5 years probation.  These convictions resulted in a point total of 3 yielding a criminal history category of II.

Because of the defendant's conviction under 18 U.S.C. § 924(c), the Guideline sentence here was the minimum term of imprisonment required by statute, that is, 10 years.  Accordingly, this court sentenced the defendant to 120 months incarceration.

Commendably, the defendant has not incurred any disciplinary infractions at the BOP. While incarcerated, the defendant has taken the following courses: personal development and infectious diseases.  In addition, it appears he is working to obtain his GED.

The defendant is currently 39 years old and is single, having never married.  He states that he has a daughter.  He was raised in Florida by adoptive parents.  He denies suffering any abuse during his formative years, and indicated that he had a close relationship with his siblings.  He avers that he has a good family who support him and he can live with his mother or girlfriend.  As noted previously, the defendant has admitted his affiliation with the

---

[3] The defendant served just over one year (398 days) in custody for this offense.

Bloods street gang in the Columbia, South Carolina area, but says now since his incarceration, he is not gang affiliated.

    3. *Seriousness of the Crimes*. As noted, this court regards the defendant's crimes as very serious and are fully supportive of a significant sentence.

    4. *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

    5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

    6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The defendant used a female decoy to intentionally draw out the victim and then used a firearm to shoot and permanently paralyze a fellow human being. To release the defendant from his sentence at this time would raise questions of public safety.

    7. *Need to Avoid Unwarranted Disparity*. Co-defendant Tiffany Metze pleaded guilty to Count 3 of the Indictment charging her with conspiracy to commit Hobbs Act robbery. She was sentenced to 57 months imprisonment. Co-defendant Bradley Thompson pleaded guilty to aiding and abetting and attempted Hobbs Act robbery, and two counts of assault on a federal officer. The two assault counts stemmed from the fact that Thompson rammed the police officers cars when they attempted to arrest him for the instant offenses.

Thompson was sentenced to 170 months incarceration. Thus it can readily be seen that the defendant's sentence was not disproportionate to those received by his co-defendants in this case.

## CONCLUSION

For the foregoing reasons, this court concludes that even assuming the defendant has demonstrated an extraordinary and compelling reason for his immediate release, this court would exercise its discretion not to reduce the defendant's sentence and order his immediate release. The court reaches this conclusion after carefully conducting an individualized analysis of the facts and issues raised by the parties, considering the facts of the case, the sentencing factors under 18 U.S.C. § 3553(a), as well as the defendant's post-sentencing conduct while imprisoned at the BOP. The court has determined that the defendant's motion for compassionate release should be denied (ECF No. 189).

To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. *See* CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director

is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

 IT IS SO ORDERED.

October 15, 2021
Columbia, South Carolina

        Joseph F. Anderson, Jr.
        United States District Judge